# In the United States Court of Federal Claims

No. 22-373
Filed: May 7, 2024

_____

|  |  |
|---|---|
| ELIZABETH M. JACOBSON, | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

_____

*Geoffrey Bestor*, The Bestor Law Firm, Hadley, MA, for Plaintiff.

*Borislav Kushnir*, Civil Division, U.S. Department of Justice, for United States.

## OPINION AND ORDER

**MEYERS, Judge**.

This case involves a dispute over the eligibility of a whistleblower to share in a recovery she claims resulted from the information that she provided.  To aid the enforcement of certain banking statutes, Congress provides the Attorney General shall pay a portion of certain recoveries to eligible whistleblowers that provide information leading to the recovery.  Here, Elizabeth Jacobson challenges the Attorney General's determinations that she was not eligible for a whistleblower award.  The United States moves to dismiss for lack of subject matter jurisdiction because Congress has explicitly stripped the courts of jurisdiction to hear claims based on the Attorney General's actions under FIAFEA's whistleblower program.  Although there is a strong presumption of judicial review, Congress may remove federal court jurisdiction if it does so clearly.  Because Congress has unambiguously done so here, the Court grants the Government's motion to dismiss.

## I.     Background

Elizabeth Jacobson worked as a mortgage loan officer at Wells Fargo Bank from 1998 to 2007.  ECF No. 1 ¶ 19.  After leaving Wells Fargo, Jacobson filed a declaration with the Attorney General under the Financial Institutions Anti-Fraud Enforcement Act, 12 U.S.C. § 4201 ("FIAFEA"), alleging that Wells Fargo "fraudulently originated thousands of 'stated income' mortgages" between 2005 and 2007.  ECF No.1 ¶ 3.  FIAFEA provides eligible whistleblowers the opportunity to file declarations alleging any "violation giving rise to an action for civil penalties" under the Financial Institutions Reform, Recovery, and Enforcement Act

("FIRREA"). If an eligible whistleblower's information leads to a recovery, the whistleblower shares in the recovery.

Jacobson's declaration informed DOJ "that Wells Fargo packaged and sold these fraudulent mortgages to investors." *Id.* ¶ 4. After DOJ interviewed Ms. Jacobson, she provided a supplemental declaration to "address questions about the stated income fraud." *Id.* ¶ 68. A few years later in 2016, after new DOJ counsel took over the Wells Fargo investigation, DOJ attorneys interviewed Jacobson again. *Id.* ¶ 72.

On March 7, 2017, DOJ attorneys met with Jacobson's counsel. In this meeting, DOJ informed Jacobson's counsel that it had determined that Jacobson was ineligible for a FIRREA award for two reasons. First, DOJ concluded that Jacobson participated in the fraudulent conduct. *Id.* ¶ 73. Second, DOJ said it had not confirmed her allegations. *Id.*

Then, on January 9, 2018, DOJ set Jacobson a letter that provided three reasons that it found her ineligible for a recovery under FIRREA. *Id.* ¶ 74; *see also* ECF No. 1-3. First, DOJ stated that Jacobson was ineligible because she participated in the alleged fraud that she brought to the Attorney General's attention. ECF No. 1 ¶¶ 79–84; ECF No. 1-3 at 1. Second, DOJ stated that Jacobson's allegations were previously made public, and she was not an original source of the information. ECF No. 1 ¶¶ 85–88; ECF No. 1-3 at 1. Finally, DOJ found Jacobson ineligible because her declaration did not provide a new factual element not already known to the Government that would support a claim under FIRREA. ECF No. 1 ¶¶ 89–92; ECF No. 1-3 at 1–2.

In August 2018, the Government entered into a $2.09 billion settlement agreement with Wells Fargo regarding allegations of "defrauding investors who purchased" residential mortgage-backed securities ("RMBS"). ECF No. 1 ¶¶ 36–46, 75; *see also* ECF No. 1-1. And this settlement addressed many of the issues that Jacobson brought to the DOJ in her declaration. ECF No. 1 ¶ 91.

In December 2018, Jacobson sent a letter to DOJ "objecting to DOJ's refusal to make an award to Ms. Jacobson." ECF No. 1 ¶ 76. After not getting a response, Jacobson again re-sent the letter to Michael Granston of DOJ on April 4, 2019. *Id.* ¶ 77. Although Jacobson alleges that she never received a response to either the December 7 or April 4 letters, she attaches to her complaint an August 2019 letter from DOJ that begins: "We are writing in response to your letter of December 7, 2018 . . . ." ECF No. 1-4. In its August 2019 letter, DOJ reaffirmed its finding that Jacobson was ineligible for award and closed the matter. ECF No. 1-4 at 2.

## II.    Legal Standard

The Tucker Act, 28 U.S.C. § 1491(a)(1), confers upon this Court jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Furthermore, "[t]he jurisdiction of the Court of Federal Claims under the

Tucker Act is 'limited to actual, presently due money damages from the United States.'" *Todd v. United States*, 386 F.3d 1091, 1093–94 (Fed. Cir. 2004) (quoting *Testan*, 424 U.S. at 398). For this Court to have jurisdiction under the Tucker Act, then, litigants must "identify a substantive right for money damages against the United States separate from the Tucker Act itself." *Id.* at 1094. "The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citation omitted). In deciding a motion to dismiss under Rule 12(b)(1), "the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Id.* (citation omitted). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

## III.    Discussion

Jacobson claims that FIAFEA provides the money-mandating source of law that establishes this Court's jurisdiction under the Tucker Act. To collect a whistleblower award under FIAFEA, a person must "file a declaration of a violation giving rise to an action for civil penalties under section 1833a of [FIRREA]." 12 U.S.C. § 4201. Declarants who submit valid declarations are entitled to share in any civil penalty the Government collects up to $1.6 million. 12 U.S.C. § 4205(d)(1)(A)(i). To be valid, the declaration must meet certain criteria. First, certain information must be included, such as: the basis for the declarant's knowledge, "specific facts, relating to a particular transaction or transactions, which constitute a prima facie case of a violation," and "at least 1 new factual element necessary to establish a prima facie case that was unknown to the Government at the time of filing." 12 U.S.C. § 4202. Second, the "Attorney General [must] determine[] that the judgment, order, or settlement was based in whole or in part on the information contained in a valid declaration." 12 U.S.C. § 4205(d)(1). Third, a declarant must not be disqualified by 12 U.S.C. § 4204, which lays out additional bars to validity such as participation in the alleged fraud. And "[i]f the Attorney General determines at any time that a declaration is invalid under [sections 4202, 4203, or 4204] . . . the declarant shall not enjoy any of the rights . . . listed in section 4205 or 4206" of Title 12. 12 U.S.C. § 4204(c).

The Government moves to dismiss because FIAFEA also divests courts, including this one, of jurisdiction over any claim based on the Attorney General's actions implementing the whistleblower program. *Id.* § 4208. Because the Court's resolution of the Government's motion turns on FIAFEA's jurisdiction-stripping provision, the Court assumes for the purposes of this opinion that Jacobson's declaration satisfied FIAFEA's requirements and that she would be entitled to compensation but for the jurisdictional provision.

FIAFEA provides that:

> Notwithstanding any other law, no court shall have jurisdiction over any claim based on any action taken by the Attorney General or any refusal to take action under this subchapter, except for failure to provide notification under section 4206 of this title.

12 U.S.C. § 4208. The Court begins with the "'strong presumption' in favor of judicial review that we apply when we interpret statutes, including statutes that may limit or preclude review."

*Hekmati v. United States*, 51 F.4th 1066, 1069 (Fed. Cir. 2022) (quoting *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016)) (additional citations omitted).  As with all presumptions, this strong presumption of judicial review can be overcome by Congress if it does so clearly.  *E.g.*, *Hekmati*, 51 F.4th at 1072 (affirming the dismissal of a case based on a jurisdiction-stripping statute).

The Constitution gives Congress the power to "ordain and establish" courts inferior to the Supreme Court.  U.S. Const. art. III, § 1; *see also id.* at art. I, § 8, cl. 9 (granting Congress the authority "[t]o constitute Tribunals inferior to the supreme Court").  And "Congress' greater power to create lower federal courts includes its lesser power to 'limit the jurisdiction of those Courts.'"  *Patchak v. Zinke*, 583 U.S. 244, 252 (2018) (plurality opinion) (quoting *United States v. Hudson*, 7 Cranch 32, 33 (1812)); *TrinCo Inv. Co. v. United States*, 140 Fed. Cl. 530, 548 (2018) (citing *United States v. Union Pac. R.R. Co.*, 98 U.S. 569, 602 (1878)) ("Article III does not require Congress to establish any federal courts other than the Supreme Court.  Consequently, Congress may grant the judicial power of the United States to them as it wills.").  It is also important that this case presents a monetary claim against the United States because it is well settled "[t]hat the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts."  *United States v. Babcock*, 250 U.S. 328, 331 (1919) (collecting cases).  Indeed, prior to the Tucker Act, plaintiffs alleging the United States took their property for public use under the Fifth Amendment's Takings Clause had to seek compensation from Congress through private bills.  *Lion Raisins, Inc. v. United States*, 58 Fed. Cl. 391, 397 n.4 (2003).  Plaintiff herself concedes that Congress has the authority to limit the jurisdiction of federal courts.  ECF No. 8 at 9.

The question is thus whether Congress has effectively removed subject matter jurisdiction over this case.  The presumption of judicial review "may be overcome by 'clear and convincing' indications, drawn from 'specific language,' 'specific legislative history,' and 'inferences of intent drawn from the statutory scheme as a whole,' that Congress intended to bar review."  *Hekmati*, 51 F.4th at 1069 (Fed. Cir. 2022) (quoting *Cuozzo Speed Techs.*, 579 U.S. at 273) (additional citation omitted).  Congress need not "incant magic words" to remove lower court jurisdiction.  *Patchak*, 583 U.S. at 251.  In fact, Congress may remove lower court jurisdiction without ever using the word "jurisdiction."  *Id.*; *see, e.g., Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir. 1995) (holding that a statute rendering an agency determination "final and conclusive" deprived the courts of jurisdiction).  Of course, when Congress clearly bars judicial review, the courts must respect that decision.  *E.g., Cuozzo Speed Techs.*, 579 U.S. at 273.

Congress incanted the magic words in this case: "Notwithstanding any other law, *no court shall have jurisdiction* over any claim . . . ."  12 U.S.C. § 4208 (emphasis added).  Courts regularly, if not uniformly, find such language sufficient to preclude judicial review.  *E.g., Rundgren v. Wash. Mut. Bank, FA*, 760 F.3d 1056, 1063 (9th Cir. 2014) (concluding that 12 U.S.C. § 1821(d)(13)(D)(ii), which provides that "no court shall have jurisdiction" over certain unexhausted claims, stripped the trial court of jurisdiction); *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1143–44 (9th Cir. 2002) (citing 8 U.S.C. § 1229c(f), which provides that "[n]o court shall have jurisdiction" over appeals from certain Board of Immigration Appeals (BIA) decisions, as a prime example of "Congress really want[ing] to eliminate judicial review over all determinations made by the BIA, discretionary and nondiscretionary").  Thus, Congress has

4

clearly divested the courts, including this one, of jurisdiction over certain claims arising under FIAFEA.

The next question, then, is whether Jacobson's claims are based on the Attorney General's actions or refusals to take action. Here, it is clear that Jacobson's claims based on the Attorney General's actions—the determinations that Jacobson is not entitled to any share of the Wells Fargo recovery. The Attorney General, acting through designees)

- April 2012 – the DOJ interviewed Jacobson regarding her declaration. *Id*. ¶¶ 66–67. Following this interview, Jacobson submitted a second declaration to address questions raised in her DOJ interview. *Id*. ¶ 68.

- Early 2016 – new DOJ attorneys investigating Wells Fargo interviewed Jacobson. *Id*. ¶ 72.

- March 7, 2017 – DOJ advised Jacobson's attorney during a meeting that she was ineligible for award "because she had allegedly participated in the fraudulent conduct and because her allegations had not been confirmed." *Id*. ¶ 73.

- January 29, 2018[1] – DOJ sent Jacobson a letter stating that she was ineligible for award. *Id*. ¶ 74 & ECF No. 1-3. DOJ's letter states that Jacobson did not qualify for any recovery for three reasons.

  o First, DOJ concluded that Jacobson "admitted to participating in the conduct for which [she] now claim FIRREA relief." ECF No. 1-3 at 1. Therefore, DOJ found the declaration failed to comply with 12 U.S.C. § 4204(a)(2).

  o Second, DOJ found Jacobson's declaration invalid under 12 U.S.C. § 4204(a)(5) "because it consists of allegations or transactions that have been disclosed to a member of the public" and Jacobson did not qualify as an original source. ECF No. 1-3 at 1.

  o Third, DOJ concluded that Jacobson's declaration failed under 12 U.S.C. § 4202(3) "because it does not contain at least one new factual element necessary to establish a prima facie case that was unknown to the Government at the time of filing. ECF No. 1-3 at 1–2.

- August 15, 2019 – Following the receipt of several communications from Jacobson (through counsel) objecting to the DOJ's eligibility determination, DOJ responded to Jacobson to inform her of its consideration of her objections. *See* ECF No. 1-4. After reciting Jacobson's allegations, DOJ reiterated that "[a]lthough she stated that she, personally, had engaged in such [allegedly

---

[1] The complaint states this letter was sent January 9, 2018. The letter, which is attached as an exhibit to the complaint, is clearly date-stamped January 29, 2018. This discrepancy has no impact on the Court's analysis.

fraudulent] conduct, we were not otherwise able to substantiate her allegations." *Id*. at 1. DOJ also determined that its settlement with Wells Fargo was based on representations to RMBS investors that did not involve Wells Fargo falsifying loan applications. *Id*. Finally, DOJ reiterated the other two reasons for finding Jacobson's declaration invalid—her admitted participation in the fraud she alleged and her reliance on public information of which she was not the original source. *Id*. at 2. At the end of this letter, DOJ stated "we consider this matter closed."

Jacobson's claims are undeniably based on these "action[s] taken by the Attorney General" that § 4208 divests this Court of jurisdiction to review. Indeed, Jacobson explicitly seeks review of the Attorney General's determinations that she is not eligible for award and that her declaration fails to meet the statutory requirements. *E.g.*, ECF No. 1 ¶¶ 79–92 (disputing the Attorney General's reasons for finding Jacobson's determinations ineligible). Thus, her claims are "based on" these actions of the Attorney General and within the scope of the jurisdiction-stripping provision. The result would be the same if one considers the refusal to accept her claim and pay Jacobson a share of the Wells Fargo settlement a "refusal to take action." In the end, Jacobson's claim that the Attorney General erred in finding her ineligible is precisely the kind of claim Congress determined the judiciary cannot hear.

In fact, Congress instructed the Attorney General how to proceed when a whistleblower's claim failed to meet statutory requirements, or the whistleblower was otherwise ineligible for award. According to Congress:

> If the Attorney General determines at any time that a declaration is invalid under this section, that a declaration fails to meet the requirements of section 4202 of this title, or that a declaration has been disclosed in violation of section 4203 of this title, the Attorney General shall notify the person who filed the declaration in writing that the declaration is invalid, and the declarant shall not enjoy any of the rights of the declarant listed in section 4205 or 4206 of this title.

12 U.S.C. § 4204(c). That is precisely what the Attorney General did here. Congress chose to give the Attorney General the final word on whether a whistleblower qualifies for a share of FIAFEA recoveries. This Court must respect that choice.

The Federal Circuit's recent discussion of jurisdiction-stripping statutes in *Hekmati*, 51 F.4th 1066, is instructive. Mr. Hekmati sought compensation from the United States Victims of State Sponsored Terrorism Fund (the "Fund"), which Congress had established to compensate people with qualifying court judgments against state sponsors of terrorism. Under the statute creating the Fund, a special master was appointed to determine whether a person presented an eligible claim under objective criteria. *See* 34 U.S.C. § 20144 (c) (listing the criteria for an "eligible claim"). And the statute in *Hekmati* provided that "[t]he Special Master *shall* order payment from the Fund for each eligible claim of a United States person to that person or, if that person is deceased, to the personal representative of the estate of that person." 34 U.S.C. § 20144(d)(1) (emphasis added). After Hekmati submitted his claim to the Fund, the special

master initially approved it but upon reconsideration found Hekmati's claim was ineligible for award due to Hekmati's attempt to sell classified information to Iran.  The Federal Circuit affirmed the dismissal for lack of jurisdiction because Congress provided that "[a]ll decisions made by the Special Master with regard to compensation from the Fund shall be . . . final and . . . not subject to administrative or judicial review" other than a review hearing before the special master if timely requested.  34 U.S.C. § 20144(b)(3)(B).  Mr. Hekmati sought and was provided a hearing before the special master, who affirmed the denial of Hekmati's claim.  *Hekmati*, 51 F.4th at 1068.  The Federal Circuit concluded that this Court could not review the merits of Hekmati's claim:

> We do not have the evidence that led [the special master] to conclude that Mr. Hekmati attempted to sell classified national security information to the Iranian government.  Nor do we attempt to discern whether [the special master] correctly reached that determination.  All we conclude is that the Court of Federal Claims cannot review the special master's decision because Congress did not give it jurisdiction to do so under 34 U.S.C. § 20144.

*Hekmati*, 51 F.4th at 1072.  Like in *Hekmati*, Jacobson filed a claim for compensation under a statutory regime that established clear eligibility criteria for compensation.  Like in *Hekmati*, the Attorney General concluded that Jacobson did not satisfy the eligibility criteria Congress put into the governing statute.  Like in *Hekmati*, Jacobson objected (albeit in writing) to the Attorney General's denial of her claim and the Attorney General reaffirmed the denial of her claim.  And like in *Hekmati*, Congress divested this Court of jurisdiction to hear Jacobson's claim.  It is true, as Jacobson argues, that Hekmati did not raise a due process challenge to the denial of his claim.  But that does not limit its application on the interpretation and effect of the jurisdiction-stripping provision as discussed in more detail below.

Jacobson attempts to maneuver around § 4208 by alleging that the decision not to award her a share in the Wells Fargo civil penalty is not the sort of "refusal to take action" that the statute envisions but is "in a different category."  ECF No. 8 at 15.  According to Jacobson, § 4208 refers only to investigative and prosecutorial discretion but does not extend to the Attorney General's decision that a declarant is ineligible for award.  *See id.*  But there is no statutory basis for such a limitation.  As a definitional matter, an "action" in this context is "a thing done."  Webster's Ninth New Collegiate Dictionary 54 (1990).  The Attorney General's determinations on which Jacobson bases her claim clearly fit within this definition.

Further, § 4208 already provides for one, *and only one*, exception to its jurisdiction stripping—a court shall have jurisdiction over a claim based on the Attorney General's failure to provide required notices under § 4206, which is not an issue here.  12 U.S.C. § 4208.  Because such a failure to provide notice is not a matter of investigative or prosecutorial discretion, the Court cannot agree with Jacobson's proposed narrowing interpretation.  Finally, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, *additional exceptions are not to be implied*, in the absence of evidence of a contrary legislative intent."  *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980) (emphasis added); *see also Archuleta v. Hopper*, 786 F.3d 1340, 1348 (Fed. Cir. 2015).  Because there is no evidence of contrary intent, it is not for this Court to create additional exceptions to Congress's statutory scheme.

Assuming § 4208 applies to the claims here, Jacobson argues that "[t]he Due Process Clause . . . requires that Plaintiff be provided a hearing to contest DOJ's refusal to award her a share in the Wells Fargo civil monetary penalty."  ECF No. 8 at 12.  Here, she relies on claims arising in district courts in circumstances where there is no jurisdiction-stripping statute at issue.  *E.g.*, *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31 (D.C. Cir. 2015) (due process rights involving denial of Medicaid coverage for specific drugs); *Goss v. Lopez*, 419 U.S. 565, 573 (1975) (student due process right to hearing regarding suspension from public school); *see also* ECF No. 8 at 8–12.

But Jacobson's arguments under the Due Process Clause do not support jurisdiction in this Court.  Jacobson disclaims bringing any claim under the Due Process Clause, insisting that she brings her claim solely under FIAFEA and it is due process that guarantees her a hearing in this Court.  To the extent this is a due process challenge to FIAFEA's text, which provides only for a written notice from the Attorney General that a whistleblower is ineligible for award, 12 U.S.C. § 4204(c) (which the Attorney General provided in this case), and § 4208's pronouncement that the Attorney General's determination is final, this Court lacks jurisdiction over such a claim.  To the extent Jacobson seeks to base her jurisdictional arguments on due process rights, that does not establish jurisdiction in this Court either.  Put simply, this Court does not have jurisdiction under the Due Process Clause because it does not compel the payment of money in the event of a violation.  *E.g.*, *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("There must be an 'underlying statutory . . . right to recovery' to support jurisdiction in the Court of Federal Claims, and absent such right assertions of violations of the . . . Fifth Amendment stand alone and do not of themselves provide Tucker Act jurisdiction.") (cleaned up); *Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir. 1995) (collecting cases).

While the parties expend significant ink on the relevance of deportation cases, the Court need not wade into that debate, because the Federal Circuit's decision in *Collins* explains the governing principle here.  In *Collins*, the plaintiff filed a claim for compensation from the United States Army and, under the statutory scheme at issue, the Army disallowed his monetary claim.  *Id.* at 286–87.  Under the governing statute, "[n]otwithstanding any other provision of law, the settlement of a claim under section 2733, 2733a, 2734, 2734a, 2734b, or 2737 of this title is final and conclusive."  10 U.S.C. § 2735.  The statute in *Collins* defined settling a claim to include a "disallowance."  10 U.S.C. § 2731.  When Collins came to this Court for compensation, the Federal Circuit held that the statute's finality provision meant that this Court "was without jurisdiction to consider the claim and it was properly dismissed."  *Collins*, 67 F.3d at 288.  Like Jacobson, Collins also claimed that this Court had jurisdiction because the Army violated his due process rights when adjudicating his claim.  The Circuit's response applies equally here:

> [T]he plaintiff argues that the trial court had jurisdiction of his claim because his constitutional rights under the due process clause of the 5th Amendment were violated.  In making this argument, [plaintiff] *obviously tries to base his claim on a constitutional exception to the enforcement of the finality clause in section 2735 of the statute*.  However, this contention is of no help to him, because the trial court did not have jurisdiction over money claims that are based upon an alleged violation by the government of the due process clause.

*Collins*, 67 F.3d at 288 (emphasis added).  Thus, whatever the merit of Jacobson's due process arguments regarding § 4208's removal of jurisdiction, *this* Court lacks jurisdiction to hear it because it is not a monetary claim against the United States.

Jacobson's reliance on *Kelly v. United States*, 69 F.4th 887 (Fed. Cir. 2023), as supplying support for her jurisdictional argument is misplaced.  It is indisputably true that if this Court finds a deprivation of a property interest protected by the Due Process Clause in a case otherwise within its money-mandating jurisdiction, this Court may send a matter back to an administrative agency for reconsideration.  In *Kelly*, a case arising under the Military Pay Act, a former servicemember claimed that he had a protected property interest in a disability retirement, and the Navy denied him due process when it refused a request for a post-separation hearing.  The Federal Circuit agreed.  *Id*. at 900.  But this Court's jurisdiction was not in doubt in *Kelly*.  The Military Pay Act provided the money-mandating source of law, and there was nothing divesting this Court's jurisdiction.  Thus, *Kelly* does not change the outcome here.

## IV.    Conclusion

Congress has entrusted the Attorney General with administering FIAFEA's whistleblower program and broadly withheld jurisdiction from the courts over claims based on the Attorney General's actions.  There is nothing for this Court to do other than grant the Government's motion, ECF No. 7, and dismiss this case for lack of subject matter jurisdiction.  The Clerk's Office is directed to enter judgment accordingly.  No costs.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge
